# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

GADSDEN COUNTY
REPUBLICAN EXECUTIVE
COMMITTEE and WILLIAM B.
DURHAM,

      Plaintiffs,

v.                                      Case No:

GADSDEN COUNTY BOARD OF
COUNTY COMMISSIONERS,
GADSDEN COUNTY SCHOOL
BOARD, and SHIRLEY GREEN
KNIGHT, in her official capacity as
Gadsden County Supervisor of
Elections,

      Defendants.

_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Gadsden County Republican Executive Committee ("Gadsden REC") and William B. Durham file this Complaint challenging the validity of the Gadsden County Redistricting Plan against Defendants Gadsden County Board of County Commissioners ("County Commission"), Gadsden County School Board ("School Board"), and Shirley Green Knight, in her official capacity as Gadsden County Supervisor of Elections.

## NATURE OF THE ACTION

Plaintiffs challenge the redistricting plan the County Commission and the School Board adopted in 2003 (the "2003 Plan"), as a violation of their Fourteenth Amendment right to equal representation under the "one person, one vote" principle of the Equal Protection Clause. The 2003 Plan unlawfully dilutes the voting strength and political influence of those living in District 1 and inflates the voting strength and political influence of those living in all the other districts in the county (Districts 2, 3, 4, and 5). The 2003 Plan therefore has a discriminatory effect on Gadsden County residents in District 1. Plaintiffs seek to enjoin the use of the 2003 Plan for any future elections and to replace it with a plan that preserves their right to equal protection under the law pursuant to Section 1 of the Fourteenth Amendment of the United States Constitution.

## JURISDICTION, VENUE, AND PARTIES

1.     This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343, as this action arises under the Equal Protection Clause of the Fourteenth Amendment. This suit is authorized by 42 U.S.C. § 1983.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part, if not all, of the events or omissions giving rise to Plaintiffs' claim occurred in Gadsden County, Florida, which is located in the Northern District of Florida, Tallahassee Division.

3.     Plaintiff Gadsden REC is the County Executive Committee of the Republican Party for Gadsden County. The purposes of the Gadsden REC include upholding the principles of freedom, equality, and justice on which the Republican Party and the government of this nation is founded, as set forth in the United States Constitution and the Florida Constitution.

4.     The Gadsden REC is comprised of a state committeeman and state committeewoman elected by the Republican voters in Gadsden County, and precinct committeemen and precinct committeewomen elected by and representing the Republican voters in their precinct. § 103.091(1), Fla. Stat.; Rule 5, Party R. P., Republican State Exec. Comm.; Gadsden County Supervisor of Elections, *Republican          Precinct          Committeeman/Woman          2020–2024*, https://www.gadsdensoe.com/Portals/Gadsden/Documents/2020-2024%20Republican%20Precinct%20Committee.pdf?ver=xMlTagfKB1yD4yzmc nPCxA%3d%3d.

5.     The Gadsden REC represents all registered Republican voters and candidates in Gadsden County, including Mr. Durham, and its members include all Republican precinct committeemen and committeewomen in District 1. Gadsden County has approximately 1,681 registered Republican voters in District 1.

6.     On information and belief, many registered Republican voters in District 1 plan to vote in the upcoming 2024 Gadsden County elections for County Commission and School Board.

7.     Plaintiff William B. Durham is a resident of Havana, Florida, located in Gadsden County, District 1. Mr. Durham is over the age of 18 and has been a registered voter in Gadsden County for approximately 10 years. He regularly votes, and plans to vote in the upcoming county elections.

8.     Defendant County Commission governs Gadsden County. §§ 124.01, 125.01, Fla. Stat. Gadsden County is a geographical and political subdivision of the State of Florida located within the Northern District of Florida. The County Commission has the authority to fix district boundaries "so as to keep them as nearly equal in proportion to population as possible." § 124.01(3), Fla. Stat.

9.     Defendant School Board is the governing body of the Gadsden County School District and is responsible for its administration, including the operation, control, and supervision of all public schools in its school district. § 1001.32(2), Fla. Stat. The School Board "may make any change that it deems necessary in the boundaries of any district school board member residence area[,]" which "shall, as nearly as practicable, be equal in population." § 1001.36, Fla. Stat.

10.     Defendant Shirley Green Knight is the Supervisor of Elections for Gadsden County. She has statutory powers, duties, and responsibilities concerning

the conduct of elections held in Gadsden County. She oversees and is responsible for the administration of elections in the county, including elections for both the County Commission and School Board. § 98.015, Fla. Stat. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

### I.   Overview of the County Commission, School Board, and Elections

11.   The County Commission has five members who serve staggered, four-year terms, with an election occurring during the general election held in November of even numbered years. The members represent single-member districts and are elected by votes from the individual district in which the commission candidate lives.

12.   County Commission districts 1, 3, and 5 will be on the 2024 ballot. Qualifying begins at noon on June 10, 2024, and ends at noon on June 14, 2024. Qualifying paperwork must be submitted to the Gadsden County Supervisor of Elections. The primary election is August 20, 2024, and the general election is November 5, 2024.

13.   Article VIII, Section 1(e) of the Florida Constitution requires the County Commission to "divide its county into districts of contiguous territory as nearly equal in population as practicable" after each decennial census.

14.    Section 124.01(3) of the Florida Statutes also requires the County Commission to "fix the boundaries of the county commissioners' districts so as to keep them as nearly equal in proportion to population as practicable."

15.    The School Board has five members, each of whom is elected from one of the five residence areas in the school district. § 1001.36(1), Fla. Stat. School Board members must be elected in a nonpartisan election by vote of the qualified electors of their residence area. § 1001.362(2)(a), Fla. Stat. School Board members are elected to serve staggered, four-year terms so that one more or one less than half of the members are elected every two years. § 1001.362(2)(c), Fla. Stat.

16.    School Board districts 1 and 5 will be on the 2024 ballot. Qualifying begins at noon on June 10, 2024, and ends at noon on June 14, 2024. Qualifying paperwork must be submitted to the Gadsden County Supervisor of Elections. The primary election is August 20, 2024, and the general election is November 5, 2024.

17.    Section 1001.36(1) of the Florida Statutes requires the school district to be divided into at least five district school board member residence areas "which shall, as nearly practicable, be equal in population." Section 1001.36(2) of the Florida Statutes authorizes the School Board to "make any change that it deems necessary in the boundaries of any district school board member residence area at any meeting of the district school board."

## II.   The 2000-03 Redistricting Process

18.   According to the 2000 Census data, the total population of Gadsden County was 45,087.

19.   On October 21, 2003, the County Commission voted 5-0 to adopt the 2003 Plan.

20.   On November 13, 2003, the School Board passed a resolution in which it adopted the 2003 Plan.

***Fig. 1. Gadsden County Commission Districts Under the 2003 Plan.***



### III.   Redistricting Discussions from 2010-2018

21.    According to the 2010 Census data, the total population of Gadsden County was 46,389.

22.    During the County Commission meeting on December 21, 2010, Commissioner Doug Croley raised the issue of redistricting and, according to the meeting minutes, "added that the districts are out of balance and it needs to be addressed under State Law." Gadsden County Clerk of Court, *BCC Minutes By Year*, *Year 2010*, 1027, gadsdenclerk.com/meetings/BCCMINPDF/BCC_Masters/2010 Master.pdf.[1]

23.    The County Commission did not engage in redistricting at the December 21, 2010, meeting.

24.    During the County Commission meeting on January 18, 2011, County Attorney Deborah Minnis gave a presentation on redistricting. According to the meeting minutes, she informed the commissioners that redistricting is "required under the Constitution [of] Florida" and they "may not need to change the lines and [] are not required to change the lines if [] populations are nearly equal[, b]ut [they] do have to go through the exercise of looking at them." Gadsden County Clerk of

---

[1] The County Commission meeting minutes often provide a summary or paraphrase the statements and testimony of the Commissioners and other speakers, rather than direct quotes.

Court,     *BCC     Minutes     By     Year*,     *Year     2011*,     75,

[gadsdenclerk.com/meetings/BCCMINPDF/BCC Masters/2011 Master.pdf](gadsdenclerk.com/meetings/BCCMINPDF/BCC Masters/2011 Master.pdf).

25.     The County Commission did not engage in redistricting at the January 18, 2011, meeting.

26.     During the County Commission meeting on February 1, 2011, the Commission determined that there should be a presentation by an attorney and the Supervisor of Elections regarding the "requirements of the law" for the redistricting process. *Id.* at 121.

27.     The County Commission did not engage in redistricting at the February 1, 2011, meeting.

28.     During the County Commission meeting on February 15, 2011, County Attorney Minnis gave a presentation on redistricting, according to the meeting minutes, "to simply give the Board an idea of what redistricting is, what the law says about it and generally how it was done the last time the County redistricted." *Id.* at 125.

29.     Commissioner Brenda Holt commented, "There's no rush to redistrict anyway—there's not any rush—you need to follow what the community wants. . . . So, we are not in a big hurry to redistrict—it can only hurt your community if you are." *Id.*

30.     The County Commission did not engage in redistricting at the February 15, 2011, meeting.

31.     During the County Commission meeting on August 16, 2011, County Attorney Minnis addressed the County Commission regarding redistricting and informed them that the census showed a population increase of 2.4%, showed comparisons to the 2000 districts, and shared the ideal district population sample. *Id.* at 698–99.

32.      Commissioner Croley read the Florida statutes requiring redistricting from time to time, and the meeting minutes note that doing so "is following the law." *Id.* at 699.

33.     The County Commission did not engage in redistricting at the August 16, 2011, meeting.

34.     The minutes from the County Commission meeting on September 6, 2011, reflect that Commissioner Sherrie Taylor brought up redistricting and include the following notation: "Redistricting – to staff – we need to address this. 2% increase in population. Where are our obligations? What is required of us? Need to finish this process. Come back at a later date with a recommendation. Does the State require us to do something? Have all right people here for discussion." *Id.* at 759.

35.     The County Commission did not engage in redistricting at the September 6, 2011, meeting.

10

36.    The minutes from the County Commission meeting on April 3, 2012, show redistricting was discussed by Commissioner Holt ("Redistricting, referenced had lawsuits been settled. She divulged she was part of one of the lawsuits on the redistricting as an individual citizen. Attorney Minnis stated they had not, the process was still on going.") and Commissioner Taylor ("Redistricting, asked to bring back before the Board to vote up or down."). Gadsden County Clerk of Court, *BCC Minutes By Year*, *Year 2012*, 293, https://www.gadsdenclerk.com/meetings/BCCMINPDF/BCC%20Masters/2012%20Master.pdf.

37.    The County Commission did not engage in redistricting at the April 3, 2012, meeting.

38.    During the County Commission meeting on January 15, 2013, County Attorney Minnis gave an update on redistricting, which is recounted in the meeting minutes as follows:

> Chair Croley asked about the progress on re-districting since this was an odd year.

> Ms. Minnis replied that it had to be determined if there is a need to redistrict. She recalled that there had been presentations in the past that indicated there was about a 2% change in the population and they may not have to redistrict. However, the board must look into the matter. She stated that, she and the Supervisor of Elections recommended that the board hire an outside consulting firm as the board did for the last redistricting process. The consultant would bring back a recommendation to the board about a plan of action.

11

Gadsden County Clerk of Court, *BCC Minutes By Year*, *Year 2013*, 15, https://www.gadsdenclerk.com/meetings/BCCMINPDF/BCC%20Masters/2013%20Master.pdf.

39.    Commissioner Croley asked to have redistricting placed on the next County Commission agenda. *Id.* at 19.

40.    The County Commission did not engage in redistricting at the January 15, 2013, meeting.

41.    During the County Commission meeting on February 5, 2013, County Attorney Minnis and Commissioner Hinson had an exchange regarding redistricting, which the minutes reflect as follows:

> Ms. Minnis [] reported there would be a meeting with the consultant on Thursday concerning the re-districting of the current voting districts.

> Commissioner Hinson asked what the percentage of change in population was needed [] to trigger the need to make changes.

> Attorney Minnis responded that the law requires that the districts be "looked at" and redistricting "be considered" every 10 years. It doesn't necessarily mean that the district lines must change.

> *Id.* at 43–44.

42.    The County Commission did not engage in redistricting at the February 5, 2013, meeting.

### A.  The redistricting presentation at the March 19, 2013, meeting

43.    Mark Logan of Sniffen & Spellman, P.A., presented to the County Commissioners at the meeting held on March 19, 2013. *Id.* at 76.

44.    Mr. Logan advised the Commission that the Constitution "requires the Counties to redraw district boundaries so as to evenly divide the population contained within each district as closely as reasonably practicable and preserve the doctrine of 'one person, one vote' and to avoid claims of violation of equal protection provisions of the 14th [A]mendment of the Federal Constitution by any arguably disenfranchised voters." *Id.*

45.    Mr. Logan also explained that state law requires that the County Commissioners "shall, from time to time, fix the boundaries of districts so as to keep them as nearly as in proportion as possible, provided that changes made to the boundaries shall be only in odd numbered years." *Id.*

46.    Mr. Logan advised that the law and Constitution required that the County Commission put forth "a good faith, due diligence effort to look at the districts and the population numbers and determine whether it makes sense to adjust the districts in a manner that makes them as close as possible" and explained that if they did nothing, they could be subjected to a Writ of Mandamus from any voter. *Id.* at 77.

47.     As recounted in the meeting minutes, Mr. Logan "suggested the [County Commission] take time, talk with experts, look at the boundaries, consider them, act accordingly, and then move forward." *Id.*

48.     The County Commission did not engage in redistricting at the March 19, 2013, meeting.

### B. The County Commission rejects redistricting at the April 16, 2013, meeting

49.     During the April 16, 2013, County Commission meeting, as described in the meeting minutes, County Attorney Minnis "explained it was the recommendation to approve option 1 to have an expert, Mr. Spitzer, 'crunch the numbers.'" *Id.* at 124.

50.     The meeting minutes describe the following comments:

Commissioner Morgan said it was important to remember that the right thing to do was to make sure the citizens were fairly represented[, and that] . . . it was time to do it, nothing would be accomplished by waiting.

Commissioner Taylor stated the laws clearly state this needed to be entertained. . . .

[County Attorney] Minnis said that the total overall [population increase] for the entire county might be 2% but when the Court looked at redistricting, they looked at the number of districts and the population in the districts and further explained there was a statutory provision that specifically did apply to counties and required them to redistrict every so often. . . .

Commissioner Morgan stated it was his opinion that the Board had clear direction from their attorney on how to proceed and it was a disservice to the County to not gather the proper information and make a decision.

. . .

Commissioner Croley . . . added that hiring an outside expert to run the maps to comply with the figures as recommended by the County Attorney was the right thing to do.

*Id.* at 124–25.

51.     On April 16, 2013, the County Commission voted 3-2 to reject redistricting and maintain the 2003 Plan. *Id.* at 125.

52.     The County Commission did not engage in redistricting at the April 16, 2013, meeting.

### C.  Additional concerns raised at the August 20, 2013, meeting

53.     During the County Commission meeting on August 20, 2013, citizen Ed Allen expressed concerns about redistricting, stating that the County Commission failed to do their job by not redistricting because District 1 was 16% over the recommended population and District 4 was 9% under the recommended population. *Id.* at 203.

54.     As set forth in the meeting minutes, "Commissioner Morgan asked [County Attorney] Minnis if they were adhering to the State's Constitution concerning the redistricting and asked for clear advice from the legal team concerning the matter." *Id.* at 206.

55.     In response, "[County Attorney] Minnis said her recommendation remained the same as at the earlier meeting and that was to hire an expert to look at

the numbers to determine whether the [County Commission] needed to make changes to the [district] line[s]." *Id.*

56.    Commissioner Croley "said he knew the right thing to do was to look at redistricting in some formal way[, and] . . . his concern was and would remain that if they did not do this voluntarily, they would be mandated to do it by some form of legal action[.]" *Id.* at 208.

57.    The County Commission did not engage in redistricting at the August 20, 2013, meeting.

### D. The County Commission rejects redistricting at the September 16, 2014, meeting

58.    During the County Commission meeting on September 16, 2014, Commissioner Morgan asked for clarification from the County Attorney regarding the redistricting issue. Gadsden County Clerk of Court, *BCC Minutes By Year*, *Year 2014*, 217, https://www.gadsdenclerk.com/meetings/BCCMINPDF/BCC%20Masters/2014%20Master.pdf.

59.    Commissioner Morgan suggested that there needed to be a workshop and "stressed that he wanted to make sure they were in compliance with what needed to be done as a governing body and if no changes were necessary, that would be great, but if changes were needed, it should be addressed." *Id.*

60.     Commissioner Taylor also expressed a desire to make sure they were in compliance. *Id.*

61.     On September 16, 2014, the County Commission took a vote on a motion to revisit redistricting. The County Commission voted 2-3, and the motion failed. *Id.*

62.     The County Commission did not engage in redistricting at the September 16, 2014, meeting.

### E.  The October 7, 2014 meeting

63.     During the October 7, 2014, County Commission meeting, County Attorney David Weiss addressed redistricting. Commissioner Morgan asked if the County Commission should hire an independent firm to evaluate the district population data, and County Attorney Weiss recommended, as set forth in the meeting minutes, that the County Commission "review and analyze any relevant data that could be collected." *Id.* at 240.

64.     While Commissioner Taylor said that the redistricting issue was properly vetted in 2012 or 2013, Commissioner Croley "disagreed an analysis was properly done because there was a recommendation from the Supervisor of Elections that an outside consultant be hired to do this, the Administrator provided information to that effect as well as the County Attorney and an outside law firm made a

presentation to that as well[, and] . . . this has not been reviewed according to the information they were provided by the County Attorney." *Id.*

65.     Commissioners Morgan and Croley stated they wanted to hire an independent firm to conduct a proper analysis regarding the need to redistrict. *Id.* at 241.

66.     The County Commission did not engage in redistricting at the October 7, 2014, meeting.

## F. The November 21, 2017, meeting

67.     During the County Commission meeting on November 21, 2017, according to the meeting minutes, "Commissioner Morgan asked about redistricting . . . [because] he just reviewed numbers county-wide of each of the districts, the number of registered voters, etc. and there was a great disparity among the districts." He also stated that "things had changed drastically and in more than one district and they wanted to make sure the citizens were represented appropriately and fairly." Gadsden County Clerk of Court, BCC Minutes By Year, Year 2017, 280–81,

https://www.gadsdenclerk.com/meetings/BCCMINPDF/BCC%20Masters/2017%20Master.pdf.

68.     Commissioner Morgan motioned that redistricting be placed on the agenda for discussion regarding what changes have occurred since 2010. The motion died for lack of a second. *Id.* at 283.

69.     The County Commission did not engage in redistricting at the November 21, 2017, meeting.

### G. The December 5, 2017, meeting

70.     During the County Commission meeting on December 5, 2017, the County Administrator's updates included a discussion on redistricting, where Interim County Administrator Dee Jackson shared that the Supervisor of Elections informed her that there were 29,747 registered voters in the County; District 1 had 7,813; District 2 had 6,517; District 3 had 4,780; District 4 had 4,994; and District 5 had 5,643. *Id.* at 295–96.

71.     Commissioner Morgan noted there was a wide disparity with the largest district having 7,813 voters and the smallest district having 4,780 voters. *Id.* at 296.

72.     The minutes reflect that County Attorney Weiss also gave the following update on redistricting:

> He said there was a mandatory obligation to look at each district after the census and the Commission was to look at numbers during odd numbered years to see if lines needed to be redrawn.
>
> . . . Mr. Weiss said to his knowledge nothing happened after the 2010 census. He reiterated they did not have to redraw lines but did have to make a determination if it was necessary. He said if their determination

19

was not necessary, they had to take action to reaffirm the [district] line[s] and that did not happen.

*Id.*

73.   The County Commission did not engage in redistricting at the December 5, 2017, meeting.

### H. The January 2, 2018, meeting

74.   During the County Commission meeting on January 2, 2018, the County Administrator gave an update on redistricting.

75.   As described in the meeting minutes, County Attorney Weiss said that County Attorney Minnis had recommended "hir[ing] a consultant to run the numbers and that he did not think that ever happened." Gadsden County Clerk of Court, *BCC Minutes      By      Year*,      *Year      2018*,      8, https://www.gadsdenclerk.com/meetings/BCCMINPDF/BCC%20Masters/2018%20Master.pdf.

76.   The meeting minutes also indicate the following: "Commissioner Morgan asked if they had met their obligation as far as re-districting and [County Attorney] Weiss said no, he did not think so." *Id.*

77.   "Commissioner Anthony Viegbesie said . . . should the [County] Commission proceed with a plan of action for redistricting, an outside firm should be acquired by the [County] Commission to also aid the process." *Id.*

78.     "Commissioner Morgan said . . . the Attorney was telling them they had not met what they were obligated to do." *Id.*

79.     "[County Attorney Weiss] said . . . what he recommended several years ago was to reach out to a firm." *Id.*

80.     The County Commission did not engage in redistricting at the January 2, 2018, meeting.

## IV.    The County Commission and School Board Fail to Redistrict Following the 2020 Census

81.     During the County Commission meeting on September 21, 2021, the meeting minutes indicate that Commissioner Viegbesie suggested "[t]hey should maybe look at redistricting[ because] when he looked at the district by district voting list, it was so skewed to one particular district[, and] . . . [he] did not think that was a fair demographic distribution of voters." Gadsden County Clerk of Court, *BCC Minutes By Year, Year 2021*, 402, https://www.gadsdenclerk.com/meetings/BCCMINPDF/BCC%20Masters/2021%20Master.pdf.

82.     The County Commission did not engage in redistricting at the September 21, 2021, meeting.

83.     Based on information and belief, following the 2010 and 2020 Censuses, the County Commission and School Board failed to adopt a new

redistricting plan to address the malapportioned districts and to comply with Constitutional requirements.

84.    At this time, the 2003 Plan is over 20 years old and does not take into account the population changes reflected in the 2010 and 2020 Censuses.

85.    According to the 2020 Census data, the total population of Gadsden County was 43,826 with a corresponding ideal population per district of 8,765 to avoid either diluting or increasing voting strength. The approximate population in each District is as follows: District 1, 11,576; District 2, 8,547; District 3, 7,597; District 4, 7,207; District 5, 8,899. The evaluation of this population data results in the following deviations from the ideal population per district:

| DISTRICT | POPULATION | DEVIATION | DEVIATION PERCENTAGE |
|---|---|---|---|
| 001 | 11,576 | 2,811 | 32.07% |
| 002 | 8,547 | -218 | -2.49% |
| 003 | 7,597 | -1,168 | -13.33% |
| 004 | 7,207 | -1,558 | -17.78% |
| 005 | 8,899 | 134 | 1.53% |
| County | 43,826 | 4,369 | 49.84% |
| Ideal | 8,765 | | |

The overall population deviation is approximately 49.84%.

86.    As a result of the 2003 Plan, the voting strength and political influence of residents living in District 1 is diluted and the voting strength and political influence of residents living in Districts 2, 3, 4, and 5 is inflated.

87.    Plaintiffs are suffering irreparable harm as a result of Defendants' actions complained herein, and that harm will continue unless Defendants' 2003 Plan is declared unlawful and enjoined.

88.    Plaintiffs have no adequate remedy at law other than this action for declaratory and injunctive relief.

## COUNT 1: VIOLATION OF EQUAL PROTECTION

89.    Plaintiffs incorporate by reference paragraphs 3–88 as if fully set forth herein.

90.    This claim is brought under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

91.    Section 1 of the Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

92.     The "one person, one vote" principle of the Equal Protection Clause of the Fourteenth Amendment mandates that each person's vote shall be equal to that of his or her fellow citizens.

93.     The 2003 Plan inflates the voting strength and political influence of the residents in Districts 2, 3, 4, and 5, and dilutes the voting strength and political influence of [District 1 Plaintiff(s)] and other persons residing in District 1, in violation of the Equal Protection requirement of Section 1 of the Fourteenth Amendment to the United States Constitution.

## **RELIEF SOUGHT**

Wherefore, Plaintiffs request that this Court:

a.     Declare that the 2003 Plan adopted by the County Commission and School Board violated Plaintiffs' right to equal protection under Section 1 of the Fourteenth Amendment of the United States Constitution;

b.     Enjoin Defendants and their agents, employees, and representatives from conducting elections for the County Commission and School Board under the 2003 Plan;

c.     In the event Defendants fail or are unable to implement a redistricting plan that comports with the United States Constitution, enforce a court-ordered redistricting plan;

d.      Exercise continuing jurisdiction over this action during the enforcement

of its judgment;

e.      Award Plaintiffs the expenses, costs, fees, and other disbursements

associated with the filing and maintenance of this action pursuant to 42 U.S.C.

§ 1988 and 52 U.S.C. § 10310(e); and

f.      Grant any other and further relief this Court deems proper and just.

Respectfully submitted this 22nd day of December, 2023.

/s/  Benjamin J. Gibson
Benjamin J. Gibson (FBN 58661)
Daniel E. Nordby (FBN 14588)
Denise M. Harle (FBN 81977)
Elise M. Engle (FBN 1025077)
Kassandra S. Reardon (FBN 1033220)
**SHUTTS & BOWEN LLP**
215 South Monroe Street,
Suite 804
Tallahassee, Florida 32301
Telephone: 850-241-1717
Facsimile: 850-241-1716
bgibson@shutts.com
dnordby@shutts.com
dharle@shutts.com
eengle@shutts.com
kreardon@shutts.com
secondary: smartin@shutts.com
                 chill@shutts.com

*Attorneys for Plaintiffs*

26